Good morning. May it please the Court, Michael Sands, your Honor, for Benchmark Construction Services, Inc., along with my colleague, Ryan Menard. This appeal concerns what we believe is a misapplication of the L-500 endorsement, which excludes coverage for certain personal injury claims under Benchmark's Commercial General Liability Policy. There is a rational reading of the provision at issue, pursuant to which the provision does not apply. That being the case, either because there is no other rational reading, that is, no rational reading on the insurer's side, or because even if there is, it best creates an ambiguity. The provision must be read in favor of Benchmark because we have a rational explanation that I'm going to review with the Court. Well, what do you say to their argument that because Benchmark is the contractor in the agreement in question, that the provision, in effect, would have no application on Benchmark's application with respect to individuals or entities that are, by definition, subcontractors? Your Honor, if you read the provision to include Benchmark as a contractor, you just about read out all coverage for personal injury claims. What I would say to that is not only would that create a situation where you have illusory insurance with regard to personal is there is a rational reading of the provision in our favor, and that's all we need to establish to provide that this exclusion does not apply, and therefore coverage does apply. Turning to the endorsement, it provides that the exclusion applies if three conditions are met. That is, referring to paragraph number two in the endorsement, three conditions have to be met for the exclusion to apply. There must be a bodily injury to any contractor, subcontractor, or any employee, volunteer worker, temporary worker of any contractor or subcontractor, one. Two, they must be injured in the course of the rendering or performing services of any kind or nature whatsoever. In our view, when you read the insurer's position, they stop their analysis at that point. That is, they take out and read in a vacuum that provision without going on to the remainder of the provision, which provides the third condition that must be met for the provision to apply, and that condition is not only must there be bodily injury to a contractor, a sub, or its employee in the course of the rendering or performing its services, but those services must be those for which any insured may become liable in any capacity. That language narrows the exclusion beyond to a point where it doesn't apply to the underlying claims in the case cited by Ms. Bailey. Yes, sir. That concept for which any insured may become liable. So apply that, if you would, to the understanding here, as alleged here. What we have is an architect who asked an artist to do a collage. The artist then asked somebody else, that's Bailey, I believe, to actually do the artwork. I gather at your position that given those facts, that there is no way in which your client could be liable for any of the work which Bailey did under those circumstances. Is that your position? Precisely, Your Honor. Precisely. And that's consistent with not only Corsetti v. Stone, where the SJC and its progeny, where the Supreme Judicial Court has said that a general contractor is not responsible for every personal injury that occurs on a job site, but only those, even with regard to its own subcontractors' employees, where it retains some measure of control over the work that they're doing. But more recently, in the Yepes case, which we've appended to our brief, it's a Superior Court case Judge Locke ruled on, with facts completely analogous to our own, which indeed are one step removed from a situation where a general contractor could ever be responsible for the injury of a subcontractor's employee. That is, in our circumstances, as in the Yepes case, you have a situation where there's no issue regarding the general contractor's retention of control such that it could be potentially liable for injuries that occur to a subcontractor's employee. No issue about retention of control because the general contractor, in this case my client Benchmark, never had control. And so the court, the Superior Court, took a look at that in the Yepes case, which again is I don't think you could find facts more on point. You had a homeowner hire a general contractor by the name of C.H. Newton to do remodeling work. Separate from that, the homeowner hired a Millwright contractor to refurbish the millwork. While one of the Millwright's employees was doing some sanding, he falls off his scaffold, the scaffold tips over and breaks his ankle. Identical almost to our facts, where homeowners hire Benchmark to do remodeling work. Separate and apart from that, through their architect, they hire Ms. Egan to do some artistic plastering work and she brings her person, Ms. Bailey, on. Ms. Bailey's performing that work when she falls off her scaffolding and the scaffolding falls over and breaks her ankle. In the Yepes case, not surprisingly, where the general contractor never had any control over the work being performed by the Millwright contractor with whom it had no contract. The court found that the general contractor was entitled to judgment as a matter of law on the personal injury claims that the Millwright's employee had filed. Similarly, in our case, Benchmark, my client, had no duty to Ms. Bailey who was injured when she fell off the scaffolding. We did not have a contract with the owner to do this decorative plastering work, this artistic work. We did not have a contract with Ms. Egan who employed Ms. Bailey. Moreover, even in our contract with the owner, we never assumed any responsibility for the owner's other contractors, which I suppose is something that could happen, but never happened here and there's no evidence of it. So we fall squarely within that scenario. That argument that your client had no duty to Ms. Bailey, I mean, that does sound like an argument that might be made in the lawsuit between Ms. Bailey and Benchmark. Isn't that correct? I mean, she's arguably, suppose the homeowner had gotten onto the scaffolding and had fallen, a scaffolding that had been provided by your client. There would be coverage. Pardon? There would be coverage. Under the policy. Under the general liability policy. So Bailey is no different than the homeowner, right? In our view, no different than the homeowner. There should be coverage under the policy. Yes, Your Honor. And in this instance, what the insurer should have done is where, at least in Massachusetts, where the duty to defend is broader than the duty to indemnify, it should have stepped up and defended the case because there exist facts, frankly, undisputed facts that we didn't hire her, didn't have any control over her, and therefore the work that she was performing, the plastering work, is not any work for which Benchmark may become liable in any capacity. And liable there, you mean, legally liable in a tort suit? Well, I suppose it could be a tort sense, Your Honor. It could be a contract sense. We didn't have any responsibility for the rendering or performing of services. Take this, if that argument is right and the exclusion does not apply, then the reason when she sues Benchmark under the general policy, right, your claim is Benchmark is covered against that suit and there's no similar language about coverage extending to only persons that you're liable for? That's exactly it, Your Honor. The parties agreed that the basis for declining coverage was based on this L-500 endorsement. We entered in some stipulated facts and we've been fighting about whether this provision... That phrase for which the insured is liable, that doesn't, nothing like that appears in the general policy. In terms of describing what the scope of the coverage... There would only be coverage in the underlying policy if the insured, Benchmark, could be held liable. But, Your Honor, it's a good question because this language, that being the case, that we could only be held liable in the underlying, that is there would only be coverage in the underlying policy for matters for which Benchmark could be held liable, renders this language, unless you accept it as I've posited it in the exclusion endorsement here, it renders it superfluous. That is, it must modify by limiting the exclusion to those instances for which we can be held liable, that is, instances of work being performed by the contractor or subcontractor or their employee for whom... You're contending here, though, that you would not be liable on these facts? Under the underlying case, yeah, we believe we have a defense, Your Honor, that is correct. But that doesn't mean we don't have a policy coverage here. Correct. I'm just, I totally understand that. I just want to make sure, and there's nothing, when you look at the policy coverage language, you'll see a distinction in that language describing coverage from the language used in the exclusion, because that exclusion specifically refers to the things that the insured might become liable for? Well, the base policy provides coverage for personal injuries where the insured is negligent, for which it can, so for which it can be held liable, yes. I'm sorry, I'm not sure if I'm answering Your Honor's question. In the base policy... I'm not sure who you are either. In the base policy, so in the underlying case, Your Honor, Benchmark contends there's no liability as a matter of law. In fact, we've moved for summary judgment. But there's coverage. But we, but that doesn't mean there's no coverage. We believe that... You believe there is coverage under the general policy? Yes, sir. There is coverage under the general policy, under the general liability policy. And then it's only, we've been... And this exclusion doesn't remove that. I mean... This exclusion does not remove that, because the exclusion is limited to those instances of a contractor or subcontractor's employee performing services and getting hurt while performing those services, but only for those services for which we can be held liable. But your, basically your argument hinges on construing for which any insured may become liable in any capacity. Well, that... And you're saying that if that simply referred to bodily injury rather than referring to the individuals for whom the contractor may be, the insured may become liable, it would be superfluous language. But isn't one of the weaknesses of your argument that the insurance, that the cases have recognized over and over again that insurance policies are sort of the home of superfluous language? I mean, it's belt and suspenders drafting, and this can be read as nothing but belt and suspenders drafting. But your answer to that is, well, maybe it can be read that way, but if so, there's ambiguity. That's exactly it, Your Honor, because even if you accept that because insurance companies do it all the time, they have superfluous language, they have belt and suspenders on Even if you accept that, all that establishes is that the insurer's view of things might be found to be rational. It doesn't mean that our view is irrational. And I would suggest to Your Honors that a plain reading of this, there is no plain reading pursuant to which you could say it's irrational. Bodily injury for services for which any insured may become liable. And I would say this, Your Honor, it yields a rational result. And I know my time is up and I will sit down, but I would say this, insureds purchase commercial general liability policies to protect themselves from personal injury and from property damage. An insured might choose to pay a little bit less and accept a little bit more risk in circumstances where it controls that risk. That is, where it controls the workers and the contractors and subcontractors for whom there might be a claim made that there would be no coverage. It controls the risk by controlling the work at the job site and it even has the opportunity with contractors and subcontractors to have them by contract add the insured as an additional insured such that it manages this risk. Conversely, if you look at it from the insurer's perspective, you're just buying a game of risk. The insurer would tell you that this exclusion applies to anybody with a contract. I'm not sure how the insurer would ever value that for purposes of selling the policy or why an insured, a rational insured, would ever purchase it. Thank you. Good morning. May it please the Court, my name is John DiCiullo and I represent the plaintiff in this action, United States Liability Insurance Company. We are asking this panel to affirm Judge Gordon's decision in the District Court. We think that the framework that Judge Gordon used was effective and really addresses the issue in a succinct manner and so our arguments are going to be organized in that structure. The issue in this case pertains to the definition of the word contractor as it appears within this exclusion and Benchmark's position since the outset of this litigation has been that the word contractor is ambiguous because it is not defined within the policy. And essentially it's made three arguments, one of which has been the main focus of oral arguments today, but I'll address them in order. First argument they make is that the definition which United States Liability Insurance Company has relied upon, which is the dictionary definition, which is that a contractor is anybody with a contract. Their argument is that that results in redundancies in the policy because anybody with a contract could also mean subcontractors, independent contractors, employees, casual laborers, etc. As Judge Gordon had indicated and Justice Souter as well today, the redundancies that exist in the L-500 exclusion as it pertains to this description is not anything that gives rise to an ambiguity. It's rational to define a contractor as someone who has a contract. And the use of belts and suspenders in insurance policies is common and Judge Gordon cited the case of Ardente versus Standard Fire in support of that proposition. And incidentally, he also noted that the insured's alternative definition of a contractor as, for example, someone who performs construction work or a construction worker. That alternative definition gives rise to the same issue. If a construction worker is a contractor, then a subcontractor or casual laborer could also be a construction worker as well. So you run into that same problem of redundancies. The... Counsel, I guess I'd like to ask you the question that I think I asked the opposing counsel at the very beginning. In what way could benchmark be liable for, in what way might they be liable for the services performed by Bailey? The artist... Asked by the artist on behalf of the architect to create this collage on an interior wall at the residence. I mean, that benchmark has absolutely nothing to do with any of those arrangements. I think we're... By the allegations, we're told they're in the process of leaving the site. So they could not be more distant from the services that are being rendered. How in any way could they be liable for the work? And that's the concept that's embedded in the exclusion. How could they be liable for that work? I would first go back to the policy language itself. And we actually take issue with an interpretation of the L-500 that keys this question of whether the contractor may become liable to the services performed by that contractor. In our view, you have to look back to the beginning of paragraph two and look at that language pertaining to bodily injury. So what the exclusion says... Don't you at least have an ambiguity then about the relevant antecedent? Surely there's an ambiguity then if that's the argument that you're going to make. I mean, I think it's a very natural reading to think that that phrase, for which any insurer may become liable, modifies the services being performed. Certainly that's a perfectly reasonable reading, isn't it? I think that, Your Honor, one needs to look at the entire provision. And the provision appears within a bodily injury insurance policy. This is the bodily injury coverage of the policy. And what this exclusion purports to do is exclude coverage for bodily injuries to any contractor who's performing services for which the insured may become liable in any capacity. I think that one has to consider all three of those elements. Now, to address the Court's specific question as to how a benchmark could become liable, one can look at the complaint in this case to see what the theory of liability is against benchmark. Bailey alleges that she was supplied ladders and scaffolding by benchmark and that the ladders and scaffolding were assembled or placed in their position in a negligent fashion by benchmark. So their allegation is a direct claim against benchmark for the things that they did, for the equipment that they supplied to Bailey on the job site. And so our position has been, because this is the allegation and the complaint, because you could potentially be held liable under a negligence theory for her bodily injuries, then this exclusion applies. Okay. So, yeah, in terms of a theory of liability, if they had some responsibility for putting up the scaffolding in a negligent way, they would argue they had no duty to her. I mean, she may have a theory of liability against them, but in terms of the work that she is doing on the premises, there's no way in which if she were to have done that work on the premises in a negligent way, she puts up a collage and it falls to the ground and hurts the homeowner. They can't be liable for that. Isn't that correct? And isn't that the relevant consideration? I don't believe so, Your Honor. This is, again, going back to the larger point, the fact that this is a commercial general liability policy. This is not a performance bond. Benchmark was not guaranteeing the performance or the services of Bailey or Bailey's employer. And the insurance company was certainly not underwriting the performance of the work by Bailey or by Benchmark. This relates to a claim for bodily injury, and the exclusion pertains to bodily injuries. And so what's excluded is a bodily injury that arises out of the course of a subcontractor or a contractor's work. If your reading is right, what's left of the coverage under the rest of the policy? The policy provides coverage for bodily injury, for property damage, for personal and advertising injury. Exclusion L-500 pertains only to bodily injury. And so would that wipe out effectively any of the coverage under the general policy for bodily injury? The way you're reading the exclusion? In certain circumstances, yes. What circumstances wouldn't it? Well, it wouldn't. Is this the odd circumstance where we happen to have a person who has no contract with any human being on earth? One has to think about the different scenarios that exist on construction sites. Why? In other words, I'm just trying to think about, just so I understand, your argument is, as I take it, you can never get coverage for a bodily injury if the person who was injured had a contract with any human being or entity. Had a contract, and the bodily injury is one for which the policyholder may become liable. So that is how it ties back in. There has to be some connection to the liability of the policyholder. Now, to this question of what would be covered under the policy, we did go into that a little bit in the brief. Examples would include the homeowner themselves. This was an occupied home, occupied by the Gelley family. If the homeowners had been injured, the exclusion would not apply to them. If there was a real estate broker coming through the property to show the property, if it was being offered for sale on the market, or if there was a potential purchaser coming through, or any number of people, a guest, for example, of the homeowner. Somebody who was trespassing, kids playing in a house that was under construction. There would be coverage for those sorts of bodily injuries. Because? Because those would not be bodily injuries sustained by a contractor arising out of the performance of a subcontractor's work, for which the insurer may become liable. And just very briefly, this is an issue. This whole area of liability is something that is covered through the use of indemnification provisions in contract. This is how contractors protect themselves. They use indemnification provisions to shift the burden of procuring insurance onto subcontractors. Now, here, this was the homeowner that elected to hire this third party. The onus was upon benchmark to get indemnification from Bailey for using the ladders, or from the homeowner who wanted to try and apparently save money by going outside the general contract and making arrangements of their own. Thank you.